IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BENJAMIN M. AUSLANDER,** | : | |
| | : | **Civil Docket No. 2:22-cv-01425-HB** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | |
| | : | |
| **TREDYFFRIN/EASTTOWN** | : | |
| **SCHOOL DISTRICT,** | : | |
| **ARTHUR J. MCDONNELL,** and | : | |
| **PACIFIC EDUCATIONAL GROUP** | : | |
| | : | |
| **Defendants.** | : | |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGEMENT**

Defendants Tredyffrin/Easttown School District (the "District") and Arthur J. McDonnell (collectively the "District Defendants"), by and through their attorneys Wisler Pearlstine, LLP, hereby respond in opposition to Plaintiff's motion for summary judgment and memorandum of law in support thereof [ECF 54], and statement of undisputed material facts [ECF 53].[1] In his memo of law, Plaintiff stated that "[t]his case is about plaintiff's efforts to express his views on CRT[2] and to obtain copies of CRT materials purchased with taxpayer money to use and distribute to further a robust and free debate on the topic." *See* ECF 54 at p. 5. The undisputed record facts demonstrate that: (1) District Defendants have not inhibited Plaintiff's efforts to express his views on CRT, and (2) the District has provided Plaintiff (and his team, Mr.

---

[1] District Defendants agree with the majority of Plaintiff's statement of undisputed material facts, as the majority are derived from the Joint Stipulation of Facts for Expedited Trial [ECF 16] submitted by Plaintiff and District Defendants. District Defendants take issue with some, which is explained throughout this instant response.

[2] CRT stands for Critical Race Theory.

Zimolong and AFL) with copies or access, or both, to every piece of paper responsive to his RTKR ("Right to Know Request").

Well before Plaintiff filed this suit, the District was transparent about its relationship with Defendant Pacific Educational Group ("PEG"), which included webpages and documents about the relationship on its website at: https://www.tesd.net/Page/16577. Indeed, Plaintiff used the plethora of information voluntarily provided by the District in his Amended Complaint (well before PEG changed its position and provided Plaintiff with copies of the 166 pages of "PEG Materials") to express his opinion that the "Tredyffrin/Easttown School District openly maintains a CRT curriculum and indoctrination program for teachers, staff, and students. https://www.tesd.net/Page/16577 (last visited March 22, 2022)." *See* Am. Compl. [ECF 21] at ¶ 7. In fact, to support his instant motion for summary judgement – Plaintiff relied on the fact that he spoke at School Board meetings about CRT **before** he even made a request for the PEG Materials. *See* Plaintiff's Statement of Undisputed Material Facts [ECF 53] at ¶¶ 26-27.

In short, Plaintiff has no evidence that District Defendants prevented him from accessing and inspecting the PEG Materials or restricted Plaintiff's anti-CRT speech in violation of the First Amendment. Accordingly, Plaintiff's motion for summary judgment should be denied.[3]

**A.     This Case is About Plaintiff's Verbatim Recordings of the PEG Materials.**

Despite producing the actual recordings of Plaintiff reading the PEG Materials verbatim into his phone, in his instant motion Plaintiff misrepresented those recordings. Plaintiff falsely stated that the District "stopped Auslander ***from recording on his phone the thoughts he expressed about the documents***." *See* ECF 54 at p. 13. Plaintiff disingenuously stated that he merely ***recorded "his own thoughts"*** [*id*. at p. 13], "***his thoughts*** on the PEG documents," and

---

[3] District Defendants' motion for summary judgment [ECF 55] is incorporated herein by reference.

2

"PEG Materials" [*id*. at pp. 14, 17-18] "***his thoughts on what the PEG documents*** say," and his "***mental impressions***" [*id*. at p. 18]. The actual undisputed facts are that every recording Plaintiff made at the inspection was of Plaintiff reading verbatim the contents of the PEG Materials into his phone.

At his deposition, Plaintiff admitted that every word he read and recorded was read verbatim from the PEG Materials. *See* Continuation of Plaintiff's Deposition [ECF 56-3] at pp. 18-34. Indeed, in real-time during the inspection District Defendants told Plaintiff that verbatim recordings of the PEG Materials were not permitted:

| | |
|---|---|
| **Mr. Auslander**: | Arthur McDonnell is telling me that I'm not allowed to voice record. It's 10 minutes of 2. He's saying that the meeting will end if I voice record some more. According to his attorney, voice recording is a violation. Who is your attorney, by the way, that you reference there? |
| **Unidentified Speaker**: | Wisler Pearlstine.[4] |
| **Mr. Auslander**: | Pardon me? |
| **Unidentified Speaker**: | Wisler Pearlstine. |
| **Mr. Auslander**: | Wisler Pearlstine is saying that you're not allowed to use voice memos while you're reading documents. |
| **Unidentified Speaker**: | No. I said your voice recordings are considered transcribing which against – |
| **Mr. Auslander**: | My voice memo is considered trans- -- and how is that different that if I just transcribed, made a copy – |
| **Unidentified Speaker**: | I just told you it's different. |
| **Mr. Auslander**: | -- with my hand. |
| **Unidentified Speaker**: | From a copyright. |

---

[4] Mr. McDonnell is the "unidentified speaker, noted in transcript.

| | | |
|---|---|---|
| **Mr. Auslander**: | | With my hand versus my voice, there's a – there's a fair use distinction – |
| **Unidentified Speaker**: | | I'm telling you that you recording what's in writing there into your phone is a violation of the copyright law. |

*See* Continuation of Plaintiff Deposition [ECF 56-3] at 31:9-32:11. After the inspection, the District specifically told PEG that Plaintiff attempted to make verbatim recordings of the PEG Materials. *See* February 2022 Email from Counsel for District to PEG Counsel [ECF 55-21] at p. 2 of 46. ("Today, when he came in to inspect, he repeatedly attempted to make verbatim audio recordings of portions of the attached materials."). Plaintiff cannot now pretend that he was simply making verbal notes of his thoughts when the recordings and Plaintiff's sworn testimony confirm that Plaintiff was exclusively reading and recording verbatim the PEG Materials.[5]

**B.** **Plaintiff Admitted that the District Did Not Treat Him Differently.**

Plaintiff falsely stated that "Mr. McDonnell did not process [his] request in the normal course. Rather, he singled out Auslander's request expressly because it requested document that would subject the Board to criticism." *See* ECF 54 at p. 16. This is demonstrably untrue.

First, Mr. McDonnell, the District's open records officer, made it clear at his deposition that it was the District's routine practice to allow for in-person inspections of copyrighted works, but to not allow for the reproduction of copyrighted works, in response to a RTKR:

---

[5] Plaintiff also egregiously implied that the District did not permit him to take notes about the PEG Materials during the inspection. *See* ECF 54 at p. 13 ("This Court would hardly tolerate the School District instructing a journalist that she could not make voice recordings or **even handwritten notes** concerning the documents she was reviewing."). Notably, Plaintiff does not include this false implication within his statement of undisputed facts. Here, the undisputed record facts show that the District provided Plaintiff with the opportunity to take notes during his inspection of the PEG Materials. *See* Arthur McDonnell Deposition [ECF 56-1] at 50:13-17 ("and then he got his phone out and I reminded him again about you know, no pictures … and I said you're welcome to take notes."). But Plaintiff chose not to take any written or verbal notes.

4

**Q**: Could you give me some examples of where you denied a requester's request for copies of documents but, nonetheless, offered a request or an opportunity to inspect them?

**A**: Uh, situations where materials were copyrighted where we couldn't produce copies, so I would say the obvious example was the request previous to this by Mr. McTiernan for these same records so a couple months prior to this request.

**Q**: Any other times when you did that besides Mr. McTiernan?

**A**: I'm sure there were others, I mean it's been I've been doing this a long time so, uh, yeah, we've had people come in and inspect records before.

**Q**: But nothing specific comes to mind?

**A**: Nothing jumps out but it would be something that either would be copyrighted or protected or something that can't be reproduced. Sometimes people request just to come in and look at them and they don't want copies so, and we have to sit with them because we're not allowed to take pictures, things like that.

**Q**: I, yeah, I'm Just so I'm clear I'm not talking where someone requests just do an inspection, I was talking about I'm asking about just specific instances that you can recall where you denied someone copies of documents but offered the opportunity to inspect them, okay? Do you understand the difference?

**A**: Yes, yes, yeah, it would be protected documents that we couldn't release physically.

**Q**: And your testimony is just before Mr. Auslander's request that's something you've done before?

**A**: Yes.

**Q**: And the one specific example of that you can remember is the one with Mr., Mr. McTiernan, correct, request?

>A: Right, Mr. McTiernan requested the same records Mr. Auslander did in this Exhibit 17 a couple months prior to his request.
>
>Q: Can you think of any other specific examples where that occurred?
>
>A: Not specific ones but it has occurred.

*See* Arthur McDonnell Deposition [ECF 56-1] at pp. 42-44.

Second, as noted in District Defendant's brief in support for their motion for summary judgement, the District offered Plaintiff's team (i.e., Mr. Zimolong and AFL), another resident, Mr. McTiernan, and Plaintiff the exact same opportunity to inspect the PEG Materials in person. In fact, when Plaintiff first requested the PEG Materials (which he did in the course of an another RTKR), ***Plaintiff specifically requested the same access the District offered to Mr. Zimolong and AFL, i.e., an in person inspection in the District's offices without the ability to make copies given the Copyright and PEG's instructions***. *See* November 2021 emails [ECF 55-15] at pp. 2-4. In making the request, Plaintiff even criticized the District and School Board:

>…you and the School Board you represent are clearly being miserly, cynical, and antagonistic in response to a reasonable ***taxpayer request to see educational materials*** that my tax dollars have paid for. If you are trying to tire me out and make me go away, I assure you that you will never be successful. This is only the beginning. As a start, ***I would like access to all of the materials which you offer to AFL since my request is in the same spirit and I am a resident taxpayer***.

*Id.* at p. 3. Counsel for the District offered the same opportunity offered to AFL and Mr. Zimolong, and emphasized that Plaintiff could not duplicate the PEG Materials:

>If you would like to request an opportunity to review Pacific Educational Group teacher training materials from prior years, please submit a Right to Know Request to Mr. McDonnell in accordance with Board Policy and the District will process your request. ***Please note that because Pacific Educational Group***

6

> ***teacher training materials are protected by copyright, you will not be permitted to copy, photograph, or transcribe the materials***.

*Id.* at p. 2.

Plaintiff has not produced any evidence that the District "singled out Auslander's request." On the contrary, the record facts – including Plaintiff's own sworn testimony[6] – clearly demonstrate that the District Defendants did not treat Plaintiff any differently that any person who submitted a RTKR for copyrighted materials.

**C.     This is Not a Copyright Infringement Action.**

Plaintiff's effort to mischaracterize this matter as a copyright infringement case is completely misplaced. *See* ECF 54 at p. 19. ("Therefore, [the District] is not the owner of the copyright and lacks standing to assert a copyright claim.").[7] Rather, the District invoked the Copyright Act as a basis to limit Plaintiff's access to the PEG Materials to inspection only because of the agreement between PEG and the District and PEG's related instructions to prohibit duplication, which are outlined at length in District Defendants' brief in support of their motion for summary judgment. The District invoked the Copyright Act to limit access to inspection only accordance with established precedent. *See Ali v. Phila. City Plan. Comm'n*, 125

---

[6] See District Defendants' Brief in Support of Motion for Summary Judgment at pp 11-12.

[7] Plaintiff's reliance on the fair use doctrine is misplaced as this is not a copyright infringement action. *See Ass'n of Am. Med. Colleges v. Mikaelian*, 571 F. Supp. 144, 151 (E.D. Pa. 1983), *aff'd*, 734 F.2d 3 (3d Cir. 1984), and *aff'd sub nom. Appeal of Mikaelian*, 734 F.2d 6 (3d Cir. 1984) ("Since the fair use exception to the Copyright Act is an affirmative defense to a suit for copyright infringement, the party asserting the exception bears the burden of production and persuasion to show that the exception (and the defense) is applicable."). In a hypothetical infringement action, which PEG would have to bring as the copyright holder, Plaintiff's duplication of the PEG Materials may very well be fair use. But that is not the issue before this Court, and any ruling by this Court regarding fair use may not prohibit PEG from bringing an infringement action against the District under the Copyright Act. *See e.g. Ali v. Phila. City Plan. Comm'n* at 104. ("A ruling by a state agency or state court that duplication by the local agency of copyrighted material pursuant to the RTKL is "fair use" under Section 107 of the Copyright Act would not preclude a copyright owner from pursuing an infringement lawsuit in federal court, and the district court would not be bound by our 'fair use' decision.'").

A.3d 92, 105 (Pa. Commw. Ct. 2015). ("The Copyright Act limits the level of access to a public record only with respect to duplication, not inspection. The public record must, therefore, still be made available for inspection under the RTKL, allowing the public to scrutinize a local agency's reliance on or consideration of the copyrighted material."). The District surpassed *Ali*'s requirements, as it was not required to ask PEG whether duplication was permitted to invoke the Copyright Act as a basis to limit Plaintiff's access. *Id.* ("Because a local agency is under no obligation to secure the copyright owner's consent, however, we hold that where a local agency invokes the Copyright Act as a basis to limit access to a public record to inspection only, the absence of consent by the copyright owner to duplication in response to a RTKL request should be presumed.").

D.      **Plaintiff Does Not Have a First Amendment Right to Duplicate the PEG Materials.**[8]

Plaintiff has failed to establish the elements of a claim for a First Amendment violation because a First Amendment right to duplicate copyrighted materials in response to a RTKR simply does not exist. This is consistent with the longstanding legal holding that, if a work is entitled to copyright protection, "First Amendment scrutiny is unnecessary." *Eldred v. Ashcroft*, 537 U.S. 186, 221 (2003). Further, the U.S. District Court for the Middle District of Pennsylvania has held that "alleged violations of Pennsylvania's Right to Know Law do not give rise to a constitutional claim." *See Breslin v. Duncannon Borough*, No. CV 12-0360, 2018 WL

---

[8] Even if this Court finds that there is a First Amendment Right for duplication of the PEG Materials, the District's actions during the inspection only need to be reasonable (which they were). District Defendants' actions are not subject to a strict scrutiny review as Plaintiff alleges. *See Porter v. City of Phila.*, 975 F.3d 374, 387 (3d Cir. 2020) ("The government may reserve such a forum 'for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view.'")(*quoting Minnesota Voters All. v. Mansky*, 201 L. Ed. 2d 201, 138 S. Ct. 1876, 1885 (2018)).

4002855, at *3 (M.D. Pa. Aug. 22, 2018). The *Breslin Court* noted the following in dismissing a First Amendment claim regarding a RTKR:

> [Plaintiff's] claim rests upon his attempt to turn his dissatisfaction with a state law administrative procedure for access to records into a federal Constitutional claim. Violations of state statutes do not give rise to claims for violations of civil rights. *Benn v. Universal Health System, Inc.*, 371 F.3d 165, 174 (3d Cir. 2004). The plain language of 42 U.S.C. § 1983 supports causes of action based upon violations, under the color of state action, of federal statutory law or constitutional rights. It does not provide a cause of action for violation of state statutes.

*Id.*

Plaintiff cited several cases addressing the First Amendment right to access or gather public information. *See* ECF 54 at pp. 12-17. None of the cases, however, involved the duplication of copyrighted materials produced for inspection in response to a RTKR. Rather, those cases involved access to court and police activity where there was a limited ability to access or make a record of the police or court activity.

In *Fields* v. *City of Philadelphia*, the Third Circuit held that there is a First Amendment right for citizens to photograph and record police conducting official business in public spaces because the recordings "provide different perspectives than police and dashboard cameras, portraying circumstances and surroundings that police videos often do not capture;" "fills the gaps created when police choose not to record video or withhold their footage from the public;" "complements the role of the news media," and have "spurred action at all levels of government to address police misconduct and to protect civil rights." *See Fields v. City of Philadelphia*, 862 F.3d 353, 359-360 (3d Cir. 2017). But even given these societal benefits, the Third Circuit held that the right to record police in public spaces "is not absolute" and "subject to reasonable time, place, and manner restrictions." *Id.* at 360.

9

Similarly, in *Philadelphia Bail Fund*, this Court held that there was a right to audio record criminal defendants' bail hearings because, inter alia, no other recordings or transcripts of the proceedings were available to the public. *See Bail Fund v. Arraignment Ct. Magistrate Judges*, 440 F. Supp. 3d 415, 418-420; (E.D. Pa. 2020), *appeal dismissed sub nom. Reed v. Bernard*, No. 20-1632, 2021 WL 1897359 (3d Cir. May 4, 2021). The Court noted that "attendance and notes alone are insufficient to comprehend the full import of these numerous and rapid hearings." *Id.* at 425. In short, in *Philadelphia Bail Fund* there was no way to properly understand the substance of the criminal bail hearings without recording them. Here, Plaintiff has demonstrated that he had a complete understanding of his objections to CRT, and the means to express his objections, without being permitted to reproduce copyrighted works.

In contrast, in *Whiteland Woods* the Third Circuit found there was no First Amendment right to videotape township meetings because there was an alternative means of compiling a comprehensive record. *Whiteland Woods*. *Whiteland Woods P. v. Twp. of W. Whiteland*, 193 F.3d 177, 183-84 (3d Cir. 1999). The court held that, "[t]he First Amendment does not require states to accommodate every potential method of recording its proceedings, particularly where the public is granted alternative means of compiling a comprehensive record." *Id.*

Here, Plaintiff stated that "This case is about plaintiff's efforts to express his views on CRT and to obtain copies of CRT materials purchased with taxpayer money to use and distribute to further a robust and free debate on the topic." *See* ECF 54 at p. 5. The District provided appropriate access that allowed Plaintiff (and his team) "to express his views on CRT" and "further a robust and free debate on the topic." The District allowed Plaintiff and his team (who declined the inspection) the opportunity to view the materials and take notes on the materials. District Defendants allowed Plaintiff (and his team) to come into a District office to sit down

with the materials to review them. There was no temporal limit placed on the review. Plaintiff has not and cannot establish that he was unable to comprehend the PEG Materials or speak critically about them as a result of the review. In fact, the contrary is obviously true.

Plaintiff's ability to speak critically about CRT has grown over time; it was not diminished by the District. **Before** Plaintiff viewed the PEG Materials — "he would speak about critical race theory" at School Board meetings. *See* Plaintiff's Statement of Undisputed Material Facts '[ECF 53] at ¶ 27. Similarly, AFL and Mr. Zimolong criticized the District's relationship with PEG without even viewing the PEG Materials. In their RTKR for the PEG Materials, AFL and Mr. Zimolong criticized CRT, the District's relationship with PEG, and issued press releases stating the same. *See* AFL / Mr. Zimolong RTKR [Exhibit 55-5] and AFL Press Releases [ECF 56-4] at pp. 1-28 of 36. Plaintiff did the same in the Amended Complaint. *See* ECF 21. Remarkably, in the current motion, which was filed after receiving the PEG Materials, Plaintiff criticized CRT, PEG and the District **without** relying on or utilizing the PEG Materials. Indeed, Plaintiff relied on and cited to information publicly posted on the District's website and other articles about CRT. *See* ECF 54 at pp. 4-7.

After reviewing, but before receiving copies of the PEG Materials during the February inspection, Plaintiff's speech critical of the District, PEG, and CRT grew. Plaintiff stated and then testified that he "ripped" the School Board by giving a public comment at the February 28, 2022 meeting, during which he criticized the District, PEG, and the PEG Materials. *See* Continuation of Plaintiff's Deposition [ECF 56-3] at 99-102:1; 115-116. ***Plaintiff testified that in making the public comment he "expressed my First Amendment opinions critical of elected officials" and "gave them my clear opinion about how I disapprove of their policies and their actions."*** *Id.* at 115:12-22. Remarkably, within that public comment Plaintiff requested that the

11

District do what it had been doing, i.e., create "a forum or mechanism where all interested parents can see all of the PEG materials which they have paid for with their tax dollars." *Id.* at 101:14-17. That forum or mechanism existed before Plaintiff filed this lawsuit in the form of a RTKR. Notably, Plaintiff has not spoken at a School Board meeting since filing this lawsuit because his attorney instructed him not to speak at the Board meetings. *Id.* at 102-104:6.[9]

In short, Plaintiff had full access to inspect and take notes on the PEG Materials. Further, once PEG changed its position and Plaintiff was provided with the PEG Materials, Plaintiff has not spoken again at a Board meeting using the copies. This is consistent with Plaintiff's Amended Complaint and motion for summary judgment – it relies entirely upon information publicly available on the District's website about PEG, not the PEG Materials themselves. Plaintiff may have been unhappy with the inspection, but displeasure with how the District conducted the inspection does not constitute a First Amendment violation.

    Respectfully Submitted,

    **WISLER PEARLSTINE, LLP**

    /s/ *Brian R. Elias.*
    Brian R. Elias, Esq.
    Christina R. Gallagher, Esq.
    Blue Bell Executive Campus
    460 Norristown Road, Suite 110
    Blue Bell, Pennsylvania 19422
    Phone: (610) 825-8400
    belias@wispeal.com / cgallagher@wispearl.com

    *Counsel for Defendants Tredyffrin/Easttown*
    *School District and Arthur J. McDonnell*

---

[9] Plaintiff also testified that filing this lawsuit allowed him to express his First Amendment Rights critical of PEG and the District. *Id.* at 75-77.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BENJAMIN M. AUSLANDER,** : | |
| : | **Civil Docket No. 2:22-cv-01425-HB** |
| **Plaintiff,** : | |
| : | |
| v. : | |
| : | |
| **TREDYFFRIN/EASTTOWN** : | |
| **SCHOOL DISTRICT**, : | |
| **ARTHUR J. MCDONNELL,** and : | |
| **PACIFIC EDUCATION GROUP** : | |
| : | |
| **Defendants.** : | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of District Defendants' Response In Opposition to Plaintiff's Motion for Summary Judgment and Memorandum of Law was served upon all counsel of record through this court's electronic case filing system.

**WISLER PEARLSTINE, LLP**

*/s/ Brian R. Elias.*
Brian R. Elias, Esq.
Christina R. Gallagher, Esq.
Blue Bell Executive Campus
460 Norristown Road, Suite 110
Blue Bell, Pennsylvania 19422
Phone: (610) 825-8400
belias@wispeal.com / cgallagher@wispearl.com

*Counsel for Defendants Tredyffrin/Easttown*
*School District and Arthur J. McDonnell*